UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
NEW YORK YOUTH CLUB; ARENA F.;
DESIREE P.; SHEILA M.; SHEMIAH M.;
RAMEL M.; JOANNE T.; BRIANNA T.;      **MEMORANDUM & ORDER**
TRINA M.; OLIVER M.; ANGEL S.;          10 CV 2898(DRH)(WDW)
VINCENT S.; and VICTOR S.,

                    Plaintiffs,
        -against-

TOWN OF SMITHTOWN;
PATRICK R. VECHIO, *as Supervisor of the
Town of Smithtown*; THOMAS J. MCCARTHY,
EDWARD R. WERHEIM, ROBERT J. CREIGHTON,
and KEVIN J. MALLOY, *as Members of
the Town Council of the Town of Smithtown*;
DEPARTMENT OF PUBLIC SAFETY OF
THE TOWN OF SMITHTOWN; and
JOHN VALENTINE, *as Director of Public Safety of
the Town of Smithtown*,

                    Defendants.
----------------------------------------------------X

**APPEARANCES:**

**Kase & Druker**
Attorneys for Plaintiffs
1325 Franklin Avenue, Suite 225
Garden City, New York 11530
By:     James O. Drucker
        Paula Schwartz Frome


**Lewis Brisbois Bisgaard & Smith LLP**
Attorneys for Defendants
77 Water Street 21st floor
New York, New York 10005
By:     Peter J. Biging
        Jason L. Ederer

**HURLEY, Senior District Judge**:

Plaintiffs bring this action pursuant to 42 U.S.C. §1983 seeking a declaration that ordinance 215-3A of the Town of Smithtown, New York is unconstitutional under the First and Fourteenth Amendments. Plaintiffs also seek damages arising from of the threatened enforcement of the Ordinance. Now before the Court is defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND

The New York Youth Club ("NYYC") is a not-for-profit corporation located in Smithtown, New York, whose stated purpose is to "provide educational and social opportunities for at-risk youths in socially and economically disadvantaged areas." (Compl. ¶ 19.) The organization targets teenagers living in areas of "gang and drug activity," and endeavors to provide them the opportunity to "engage in constructive activities and learn how to function in the world of business." (Compl. ¶ 20.)

The particular activity of NYYC at issue here involves youth members of the organization who go door-to-door in affluent neighborhoods to "explain [NYYC's] mission and sell[ ] candy and small items to raise money for the activities of NYYC." (Compl. ¶ 22.) These sales allow the organization's members to earn credit towards "field trips conducted by NYYC, or for merchandise." (Compl. ¶ 23.)

On October 15, 2009, the Town of Smithtown amended Article 215 of the Town Code to require the following:[1] (1) Soliciting or canvassing may be performed only after

---

[1] As the Ordinance itself has not been produced, this Memorandum and Order presents the language of the statute only as it is recited in the Complaint.

obtaining a license, with a waiver granted to charitable, religious, and other not-for-profit organizations that register with the Town Clerk and demonstrate "proof of organizational status."[2] (Compl. ¶ 38.) (2) No one under the age of 16 may solicit or canvass within the Town unless accompanied by a parent or legal guardian. (Compl. ¶ 39.) (3) No one may solicit under any circumstances from a "stationary location on a public street" or in a "congested area where [the seller's] operation might impede or inconvenience the public." (Compl. ¶¶ 41-41.) Soliciting or canvassing is defined in the Ordinance in relevant part as going "from place to place, from house to house, from street to street, or from store to store to sell or take orders for goods, wares, merchandise or provisions for future delivery . . . or for the purpose of obtaining contributions of money or of goods, wares or provisions at any place within the Town of Smithtown." (Compl. ¶ 43.)

The amended Ordinance presented an immediate problem for NYYC. Because most parents either work during the hours their children make these solicitations, or do not have their own transportation to bring their children to the appropriate neighborhoods, supervising their child's canvassing efforts is simply not an option – nor is allowing them to go off and do so on their own. Therefore, most of the parents allowed their children to solicit for NYYC only while under supervision of an adult NYYC "crew manager," which is no longer allowed under the Ordinance. (Compl. ¶¶ 26, 29-30.)

The plaintiffs in this action include NYYC, seven members of the organization under the age of 16, and five of their parents and/or guardians. (Compl. ¶¶ 2-8.) They allege that because NYYC members under the age of 16 largely canvass under the supervision of these "responsible adults," or "crew managers," (compl. ¶ 51), rather than with a parent or guardian as required by the Ordinance, the amendments have the

---

[2] Plaintiffs do not appear to challenge this portion of the Ordinance.

practical effect of depriving plaintiffs of the ability to advocate and raise money for the organization within Smithtown – a town that "comprises a significant portion of Suffolk County, and in which they have sold previously made sales," (compl. ¶ 45; *see also id*. ¶¶ 66, 69). Plaintiffs claim that the Ordinance violates: (1) NYYC's and the youth plaintiffs' First Amendment rights to free speech and free association, (2) the youth plaintiffs' right to travel (compl. ¶ 55), and to the equal protection of the law (compl. ¶ 57), and (3) the parent/guardian plaintiffs' right to raise their children without undue government interference (compl. ¶ 62).

## DISCUSSION

### I. STANDARD OF REVIEW

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between

5

possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (*quoting and citing Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

## II. PLAINTIFFS' FIRST AMENDMENT CLAIMS

It is important to begin by noting that the Supreme Court has long recognized the type of door-to-door solicitation by organized charities at issue here as a form of speech protected under the First Amendment. *See, e.g., Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150 (2002); *Village of Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620, 628-32 (1980); *Hynes v. Mayor and Council of Oradell*, 425 U.S. 610 (1976); *Martin v. City of Struthers*, 319 U.S. 105 (1943). Specifically, these particular solicitations implicate not just the sale of merchandise, but also charitable fundraising, and the advocacy of the mission and interests of NYYC. (Compl. ¶¶ 52, 66, 69.) However, the Supreme Court has also recognized "the interests a town may have in some form of regulation [over such canvassing], particularly when the solicitation of money is involved." *Watchtower*, 536 U.S. at 162; *see Schaumberg*, 444 U.S. at 632 ("[S]oliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech . . . .").

### a. The Appropriate Level of Scrutiny

The first step in assessing the balance of these competing interests under the First Amendment is to settle on the appropriate level of scrutiny to be applied. In that pursuit, the Court is initially charged with determining whether the regulation is content-neutral, that is, whether it may be "justified without reference to the content of the regulated speech," *Ward v. Rock against Racism*, 491 U.S. 781, 791 (1989)(quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984), and/or whether "the government has adopted a regulation of speech because of disagreement with the message it conveys," *id.*; *see also Turner Broad. Sys. v. FCC*, 512 U.S. 622, 645 (1994)("[E]ven a regulation neutral on its face may be content-based if its manifest purpose is to regulate speech because of the message it conveys.")(citing *United States v. Eichman*, 496 U.S. 310, 315 (1990)).

The parties dispute whether the Ordinance here is content-neutral as a matter of law. Plaintiffs argue that deeming the statute content-neutral at this stage would contravene the well-pled fact that it "was enacted specifically because the Town wished to deny the plaintiffs the right to free speech [and] other constitutional rights." (Plaintiffs' Memorandum in Opposition to the Motion to Dismiss the Complaint ("Ps' Opp.") at 12 (citing *inter alia* compl. ¶ 61 ("[T]he Ordinance was passed with actual malice and with an intent to discriminate against the Member Plaintiffs and burden them in the exercise of their rights.")).) Plaintiffs argue in their memorandum that the statute came about "solely because the residents of the Town of Smithtown were uncomfortable with the members of the NYYC, clearly of different ethnic and/or socio-economic status, visiting their neighborhoods." (Ps' Opp. at 11.) As noted above, the Complaint describes the

7

members of NYYC as "at-risk youths [living] in socially and economically disadvantaged areas" and "areas with gang and drug activity" who solicit door-to-door in "more affluent neighborhoods." (Compl. ¶¶ 19-22.) The Complaint also alleges, somewhat vaguely, that "the activities of NYYC have caused some consternation in the Town." (Compl. ¶ 36.)

Plaintiffs' theory essentially posits that the Town was not so much concerned with the content of the speech, but with the speakers themselves, and acted to exclude them accordingly. However, the Supreme Court has explicitly rejected the "broad assertion that all speaker-partial laws are presumed invalid." *Turner*, 512 U.S. at 658. Rather, "speaker-based laws demand strict scrutiny [only] when they reflect the Government's preference [or aversion] for the substance of what the []speakers have to say." *Id.*

The Ordinance at issue here does not reflect any such content preference, and operates independently of what a particular canvasser or group of canvasser may choose to communicate to residents. *See Ward*, 491 U.S. at 791 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.") Moreover, the Ordinance does not prohibit *all* soliciting and canvassing. Rather, it restricts the manner and place of such speech (*i.e.* minors may solicit only if supervised by a parent or guardian, and solicitation must occur outside "congested areas").

"Content-neutral regulations may limit the time, place, or manner of expression – whether oral, written, or symbolized by conduct – even in a public forum, so long as the restrictions are reasonable, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication of the

8

information." *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 98 (2d Cir. 2006) (internal quotation marks omitted). This is known as intermediate scrutiny.

### b. Application of Intermediate Scrutiny

Defendants first contend that the Ordinance was not passed to limit the presence of certain youths in the Town's more affluent neighborhoods, as plaintiffs allege, but to address a growing problem affecting the safety and welfare of children within the Town. According to defendants, many ostensibly beneficent organizations exploit underprivileged youth and circumvent child-labor laws by employing young teens to sell merchandise, while referring to them as community volunteers. In support, defendants cite to a recent report from the U.S. Department of Labor ("DOL") which stated the following:

> Congressional hearings and the Department's enforcement experience have shown that the problems associated with children performing door-to-door sales and street sales are numerous. These youth are often transported by crew leaders in vans, which fail to meet proper safety and insurance requirements, to areas quite distant from their home neighborhoods. They are often required to work many hours on school nights and late into the evening. These minors are frequently placed by employers, without adult supervision, at subway entrances, outside large office buildings, at high-traffic street corners, and on median strips at busy intersections where they can attract potential customers. Reports of children being abandoned, suffering injuries from violence and motor vehicle crashes, and being exposed to the elements have been substantiated. Youth have been injured and have died as a result of these activities. Intimidation by crew leaders is commonly reported.

Child Labor Regulations, Orders and Statements of Interpretation, 75 Fed. Reg. 28404 (May 20, 2010)(to be codified at 29 C.F.R. pts. 570, 579).

Defendants also cite a 2010 U.S. Department of Labor ("DOL") regulation which characterizes peddling and door-to-door sales as "oppressive child labor within the meaning of the Fair Labor Standards Act when performed by minors who are 14 and 15 years of age." *See* 29 C.F.R. §570.33.[3] Governments possess an important interest in ensuring the welfare of children in general, *see Md. v. Craig*, 497 U.S. 836, 855 (1990); *Hodgson v. Minnesota*, 497 U.S. 417, 444 (1990), and in preventing the abuses of child labor in particular, *see Prince v. Massachusetts*, 321 U.S. 158, 168-70 (1944).

However, plaintiffs assert that defendants' stated interest in passing the statute is merely a *post hoc* justification for an ordinance that was, in truth, enacted for the more "dubious" reasons cited above. They note that the Ordinance contains no preamble, statement of purpose, or other findings that often accompany such statutes. They also add that the DOL report cited by defendants was published *after* the Ordinance was passed. Plaintiffs claim that the defendants' reference to the federal regulations and study amounts to the "mere incantation of a proper stated purpose," rather than a showing that the Ordinance was the "product of reasoned analysis." (Ps' Opp. at 11 (citing *Ramos v. Town of Vernon*, 353 F.3d 171,180 (2d Cir. 2003)).

In relying on a particular interest to justify the passage of a given law under the First Amendment, a municipality need not necessarily show that it conducted its own formal study on the matter. For example, cities have been permitted to rely on studies

---

[3] Subsection (j) of the regulation defines "peddling" to include "the selling of goods or services to customers at locations other than the youth-employer's establishment, such as the customers' residences or places of business, or public places such as street corners and public transportation stations." 29 C.F.R. §570.33(j).

conducted by other cities, *see Renton v. Playtime Theatres*, 475 U.S. 41, 51 (1986), or on judicial opinions, *see City of Erie v. Pap's A.M.*, 529 U.S. 277, 295 (2000) to justify the passage of a particular ordinance, *see also Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71 (1976) ("The city must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems."). However, "whatever evidence the city relies upon [must be] reasonably believed to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51-52. At the very least, "[a] city must provide *some* evidence of a connection between 'the speech regulated by the ordinance and the secondary effects that motivated the adoption of the ordinance." *White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 171 (2d Cir. 2007)(emphasis added)(quoting *City of L.A. v. Alameda Books*, 535 U.S. 425, 441 (2002)). Furthermore, the Second Circuit has interpreted the Supreme Court cases cited above to require that the defendant consider such evidence *before* enacting the statute. *White River*, 481 F.3d at 171-72 (citing to cases in the 1st, 5th, 8th, 10th, and 11th Circuits following the same principle).

It is unclear at this stage whether the Town considered the cited child-labor issues prior to enacting the amendment. Although the federal report and regulation came into existence after the Ordinance was passed, the Town may of course have considered other evidence that spoke to the same problems articulated in that federal report. However, the defendants have not produced any evidence that they actually did so. Given the absence of such evidence, and the limited scope of review on a 12(b)(6) motion, the Court cannot determine at this juncture what evidence the Town actually relied on in passing the Ordinance. Without making this predicate determination, the Court cannot pass on

11

whether the Ordinance is substantially related to the Town's stated interest. The Court must therefore defer resolution of the matter until after the parties have had the benefit of discovery to develop a record on this and other fact-based issues regarding the constitutionality of the Ordinance. Accordingly, defendants' motion to dismiss plaintiffs' First Amendment claims is denied.

### III. EQUAL PROTECTION CLAIMS

The under-16 plaintiffs allege a violation of their equal protection rights based on age. (Compl. ¶ 57.) The parties again differ over what level of scrutiny should be applied. Defendants argue that age is not a suspect classification, and therefore the Court should look to rationale-basis scrutiny.

Defendants' support their position for this reduced scrutiny by citing to a case in which a prisoner alleged that he was denied his high school graduate equivalency degree because of his age. *See Turner v. E. Meadow Sch. Dist.*, No. 07-CV-4318 (JS)(AKT), 2009 U.S. Dist. LEXIS 29524 (E.D.N.Y. Mar. 31, 2009). There, the court noted the well-established rule that age is not a suspect classification and thus applied rationale basis scrutiny to its equal protection analysis. However, the deprivation in that case involved the prisoners access to education, which the court explained is not afforded constitutional protection. *Id.* at *5. The case here is markedly different, as it involves the "interplay between rights-based and class-based equal protection claims." *Ramos*, 353 F.3d at 178. In other words, the disparate treatment of the under-16 plaintiffs allegedly deprives them of a constitutionally protected right, namely the right to free speech and association, which requires an elevated level of scrutiny.

12

Arguably, one could define plaintiffs' deprivation in more narrow terms to deemphasize the importance of the underlying right. In other words, if the age classification was framed as dispossessing the younger plaintiffs of the opportunity to solicit door-to-door without their parents present, then the underlying deprivation would not appear to implicate a constitutional right. But the Circuit in *Ramos* cautioned against focusing on the "manner in which the right would be exercised," rather than on the right itself. 353 F.3d at 177. Drawing a direct analogy here, whether an individual's parents are present while they are soliciting, is "not related to whether a constitutional right *exists*" but to "the strength of the government's interest in regulating the manner in which minors exercise their rights." *Id.* (The underlying right "does not magically appear and disappear with an adult's presence.")

Therefore, although an age-related equal protection claim typically invokes rationale-basis scrutiny, once a constitutional right "has been acknowledged, the equal protection framework allows for a more discerning inquiry to accommodate competing interests." *Id.* at 178 (applying intermediate scrutiny).

Plaintiffs' equal protection claims are therefore subject to the same intermediate scrutiny and analysis as the first amendment claims. As defendants' motion to dismiss the latter has been denied at this stage, so too is their motion to dismiss the former, largely for the reasons articulated in the prior section.

### IV. PARENTAL-RIGHTS CLAIMS

Defendant's motion to dismiss plaintiffs' parental-rights claims fails for substantially similar reasons. The parent/guardian plaintiffs allege that the Ordinance

violates their fundamental right to "the care, custody, and control of their children." *See Troxel v. Granville*, 530 U.S. 57, 65 (2000). Among the interests encompassed by this substantive due process right are a parents' rights to "establish a home and bring up children[,] . . . to control the education of their own," *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923), and "to direct the upbringing and education of children under their control," *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925).

The Ordinance allegedly violates the parent plaintiffs' interest in allowing their children to sell, solicit and canvass door-to-door without their presence or supervision. In *Ramos*, the Circuit addressed the effect of a juvenile curfew ordinance on the parents' right to allow their children to move freely about the town at night. There, the Circuit also applied intermediate scrutiny in its analysis of the ordinance's impact on parental rights. As with plaintiffs' other two constitutional claims above, their parental-rights claim also hinges on whether the Ordinance survives intermediate scrutiny, which, as discussed in section II above, cannot be determined at this juncture. Defendants' motion to dismiss plaintiffs' parental rights claims must therefore be denied.

## V.  RIGHT TO TRAVEL

Plaintiffs next allege that the Ordinance violates their "right to travel" because it forbids them from soliciting door-to-door within Smithtown. (Compl. ¶ 55.) While the Second Circuit recognizes the "right to free movement" within a state, *see Town of Southold v. Town of East Hampton*, 477 F.3d 38, 53 (2d Cir. 2007), this right is by no means unlimited. "A statute implicates the constitutional right to travel when it actually deters such travel, or when impedance of travel is its primary objective, or when it uses

14

any classification which serves to penalize the exercise of that right." *Five Borough Bicycle Club v. City of New York*, 483 F. Supp. 2d 351, 362 (S.D.N.Y. 2007)(citing *Soto-Lopez v. New York City Civil Serv. Comm'n*, 755 F.2d 266, 278 (2d Cir. 1985)). Not only does the Complaint fail to allege that the "impedance of travel" is the Ordinance's "primary objective," it fails to allege that plaintiffs' travel is at all restricted. Although plaintiffs may be limited in their ability to go door-to-door or stand in a congested area when they are selling merchandise or soliciting donations, they are not outright prohibited from travelling to or within these areas. Defendants' motion to dismiss this claim is therefore granted.

## VI. LEGISLATIVE IMMUNITY

Defendants argue that individual members of the Town Council should be dismissed from this action based on their capacity as local legislators. Absolute legislative immunity extends to local legislators. *Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir. 1997); *Orange Lake Assoc., Inc. v. Kirkpatrick*, 21 F.3d 1214, 1224 (2d Cir. 1994)(Town Board members). In *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) the Supreme Court held that whether an act is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.*; *see Harhay v. Town of Ellington Board of Education*, 323 F.3d 206, 210 (2d Cir. 2003).

The Complaint does not make any specific allegations as to these defendants, except to refer to them as members of the Town Council of the Town of Smithtown, the body that presumably enacted the Ordinance. (Compl., caption, ¶ 10.) For enacting the subject Ordinance as town legislators, these defendants are entitled to absolute immunity.

15

Plaintiffs, nevertheless argue that immunity should not apply because the claims are brought against them in their official, not their individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991)(personal immunity defenses not available to defendants sued in their official capacity). However, this is a distinction without difference for present purposes. If these individual council members are indeed being sued in their official capacity, then the claims against them are in actuality claims against the municipal entity. *See Monell v. Dep't of Social Services of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)( "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.") As the very case cited by plaintiffs on this point states: "Where the governmental entity can itself be held liable for damages as a result of its official policy, a suit naming the legislators in their official capacity is redundant." *Rini v. Zwirn*, 886 F. Supp. 270, 281 (E.D.N.Y. 1995).

Because these individuals are named in their official capacity, and because the Town of Smithtown would be the real party in interest, defendants' motion to dismiss the individual members of the Town Council is granted.

### VII.  PERSONAL INVOLVEMENT

"It is well-settled in [the Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Middleton v. City of New York*, No. 04-CV-1304, 2006 U.S. Dist. LEXIS 44320 (E.D.N.Y. June 19, 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (internal quotation marks omitted, alteration in the original). However, "[p]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff

is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983." *Davidson v. Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001)(citation omitted).

Here, plaintiffs seek, *inter alia*, an injunction against the enforcement of the Ordinance. (Compl. ¶ 72.) They also allege that defendant John Valentine is the Director of Public Safety of the Town of Smithtown, which is "responsible for the enforcement of the laws, statutes and ordinances of the Town." (Compl. ¶ 11.) Likewise, defendant Patrick R. Vecchio is the Town Supervisor. Although, plaintiffs' failure to allege the personal involvement of these individuals in the Complaint precludes them from collecting damages from these individuals, defendants Vecchio and Valentine are both appropriate defendants for plaintiffs' claims for declaratory and injunctive relief. *See Davidson*, 148 F. Supp. 2d at 254 ("[A]ctions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action.") Defendants' motion to dismiss these individuals is therefore denied.

The claims against the Department of Public Safety, however, must be dismissed as it is not a suable entity. *See Yonkers Com. on Human Rights v. Yonkers*, 654 F. Supp. 544, 551 (S.D.N.Y. 1987).

## CONCLUSION

Accordingly, defendants' motion to dismiss is denied as to plaintiffs' First Amendment, equal protection, and parental-rights claims, but granted as to plaintiffs' claims under the freedom of movement. All claims are dismissed against defendants

Thomas J. McCarthy, Edward R. Werheim, Robert J. Creighton, Kevin J. Malloy, and the Department of Public Safety.

**SO ORDERED.**

Dated: Central Islip, New York
    March 31, 2012

>                     /s/
> Denis R. Hurley
> United States District Court